**FILED**

**1:28 pm, Jan 13, 2022**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Rebecca Hankins David Roach
20 Center Dr Crawfordsville Indiana
Zip exempt DMM 602 1.3 e2
765-562-7378

INDIANA FEDERAL DISTRICT COURT

SOUTHERN DISTRICT

REBECCA JANE HANKINS, DAVID JAMES ROACH,,

       Plaintiff,

vs.

SHERRI BENTLEY, MONTGOMERY COUNTY ASSESSOR, WINGATE PROPERTIES LLC BY VINCENT C. KREGEAR.35277-49, MONGOMERY COUNTY

       Defendant

Case No.: [Number]

    1:22-cv-00080-JMS-DLP

COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF FOR POSSIBLE WRIT OF ASSISTANCE

Complaint for Emergency Injunctive Relief for possible writ of assistance

    This is an action in reverse defiency proceedings to initiate a writ of replevin for recovering property exempt from taxation was taken and sold under color of law and under color of official office.

    Deprivation of property rights by a person acting under color of law may constitute a deprivation of rights secured by the United States Constitution and laws. The rights, privileges, and immunities referred to in the Civil Rights Act, providing that any person who, under color of law deprives a citizen of any rights, privileges, or immunities secured by the United States Constitution and laws shall be liable to the party injured,1 It include not only strictly personal rights but also property rights.2 A taking claim brought pursuant to the Act is predicated upon the Federal Constitutional requirement of the Fifth Amendment that the government may not take private property

without just compensation.3. See Exhibit I14 C.J.S. Civil Rights § 109 Deprivation of rights by person acting under color of law, generally

I/we Rebecca Jane:-Hankins & David James:-Roach (hereinafter plaintiffs) two of the people on the land hereby give notice of demand for reverse defiency proceedings on property known as 20 Center Drive Crawfordsville, Indiana . DMM 602 1.3 e2 zip exempt

I/we Rebecca Jane:-Hankins & David James:-Roach are not a member of the bodies politic and corporate.

Plaintiffs now give notice that both plaintiffs are real parties in interest; as plaintiff David James: -Roach lives; at the property in question, & has Cash monies; in sum total of approximately 50,000.00 dollars invested in repairs, to said property, and sweat equity, of 50,000.00 dollars totaling 100,000.00 thousand dollars, & 0 cents.

Plaintiff Rebecca Jane:-Hankins also lives at the property in question, which was held in a fee simple Allodial state free hold under conventional ownership by Rebecca Jane:-Hankins who also retains sweat equity & cash monies in the property in question, in the sum total of 80,000.00 dollars over approximately forty year; period.

I Rebecca Hankins & David Roach hereby give notice of reverse defiency proceedings for property known as 20 Center Drive Crawfordsville, Indiana for lack of offer and payment of the remaining value of said private property for personal use held

COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF FOR POSSIBLE WRIT OF ASSISTANCE - 2-28

1   in a fee simple free hold under conventional ownership the state unlawfully sold without

2   paying.

3           This is an action in reverse defiency proceedings to initiate a writ of replevin for

4   recovering property & damages which was held in a fee simple Allodial state free hold

5   under conventional ownership, that was unlawfully/fraudulently taxed and unlawfully

6   sold for a private purpose constituting a taking of private property in violation of the

7   State and Federal constitutions.

8

9           First Wingate properties LLC was in negotiations for the return of the property in

10  questions known as 20 Center drive. Wingate properties LLC left the negotiations with

11  James Ray Roach Rebecca Jane:-Hankins  eldest son, a former  Contract employee of

12  the DOD/Air Force One; now medically retired due to being a Marine War-Time 100%

13  Service-Connected disabled veteran. Wingate properties LLC has alleged they paid

14  over thirty thousand dollars which they are demanding a ridiculous price gauging 12%

15  interest rate over 15 years over $500.00 a month from James Ray Roach. Wingate

16  properties LLC left and filed this writ of assistance with no warning they were leaving

17  negotiations to file for a writ of assistance. Wingate properties LLC is unaware they

18  don't have lawful ownership due to Montgomery County assessor assessing and taking

19  exempt property under color of law, because Wingate properties LLC left negotiations

20  with no notice.

21          :Rebecca Jane:- Hankins is the lawful owner as the court will see herein.

22  :Rebecca Jane:- Hankins and all who dwell at 20 Center Drive are not squatters.

Rebecca Jane: -Hankins & David James: -Roach are filing in Federal District court to sue for damages and the return of the Exempt property unlawfully assessed taxed and stolen.

This is the second time I/we Rebecca Hankins & David Roach have had to file for the recovery of the private property in question held in a fee simple Alodial state free hold under conventional ownership the first time was filed in February, 2015 then exempted by Ind. Code 6-1.1-2-7 § (1) (2) &(3) Exempt property to which the assessor immediately discharged the alleged tax and returned the property without disputing the properties status as untaxable. So, after agreeing in 2015 the property wasn't taxable; why has the assessor unlawfully knowingly taxed and sold the property a second time.

**Effective: July 1, 2019** See Exhibit A Ind Code § 6-1.1-2-7 Exempt property

 Sec. 7. (a) As used in this section, "nonbusiness personal property" means personal property that is not:

(1) held for sale in the ordinary course of a trade or business;

(2) held, used, or consumed in connection with the production of income; or

(3) held as an investment.

 **see exhibit B** Ind. Code § 6-1.1-1-11 (3)  "Personal property" defined § (3) all other tangible property (other than real property) which: (A) is being held as an investment; or (B) is depreciable personal property; as Ind. Code § 6-1.1-1-11 (3)(a) (b) Excludes only. real property which: (A) is being held as an investment; or (B) is depreciable personal property, and Ind. Code § 6-1.1-1-19 "Tangible property" defined Sec. 19. "Tangible property" means real property and personal property as those terms are defined in this chapter. effective through July 1, 2021see Exhibit C Ind. Code § 6-

COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF FOR POSSIBLE WRIT OF ASSISTANCE - 4-28

1.1-1-19. So  Rebecca Jane:-Hankins real property known as 20 Center Drive Crawfordsville, Indiana is included under Ind Code § 6-1.1-2-7(1) (2) &(3) Exempt property.

I Rebecca Hankins & David Roach also attempted four 4 times to file an acceptance of deed showing the property was not:

(1) held for sale in the ordinary course of a trade or business;

(2) held, used, or consumed in connection with the production of income; or

(3) held as an investment.

The property in question was private property for personal use held in a fee simple Allodial state free hold under conventional ownership. However the ladies in the recorder's office refused to file my acceptance of deed 4 times. Then refuse to identify themselves to prevent me from pursuing a writ of mandamus to make them file my acceptance of deed. showing my property exempt property under Exhibit A Ind. Code 6-1.1-2-7 § (1) (2) &(3) Exempt property.

The assessor has acted under color of law and under color of official offices violating the Hobbs Act. A federal statute, known as the Hobbs Act, provides that "whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."[1] The Hobbs Act defines "extortion" to mean the obtaining of property from another, with his or her

consent, induced under (among other things) color of official right.[2] see Exhibit D **35 C.J.S. Extortion § 13 Extortion under Hobbs Act, generally**

Common-law extortion was a property offense committed by a public official who took any money or thing of value that was not due to him or her under the pretense that he or she was entitled to such property by virtue of his or her office.1 Extortion by a public officer has been defined as the corrupt demanding and receiving by an officer, by color of office, of money or other thing of value, that is not due at all, or more than is due, or before it is due.2 See Exhibit W 31A Am. Jur. 2d Extortion, Blackmail, etc. § 6 Generally

In order to constitute extortion, the taking must take place under color of office—that is, under the pretense that the officer is entitled to the fee by virtue of his or her office.1 This requires that the service rendered must be apparently, or pretended to be, within official power or authority, and the money or thing of value must be taken in such apparent or claimed authority.2 See Exhibit V 31A Am. Jur. 2d Extortion, Blackmail, etc. § 9 Color of office

Any public officer clothed with official privileges and duties may be prosecuted for the offense of extortion under color of office whether he or she is a federal, state, or local officer or an executive, legislative, or judicial officer.1 Any person occupying an official or quasi-official position may be guilty of the offense.2 See Exhibit X 31A Am. Jur. 2d Extortion, Blackmail, etc. § 8 Who may commit offense

Whether a tax assessment may be abated upon the ground that the assessors included property not subject to taxation (either because it was expressly made exempt by controlling statutes, because it was not property of the kind subjected to taxation by

the general revenue statutes of the taxing jurisdiction, or because it had no situs for tax purposes within the taxing district in question) depends primarily upon the applicable legislation relating to or affecting the subject of the abatement of assessments. It has been frequently recognized that under a proper interpretation of the applicable legislative enactments, an abatement may, in a proper case, be granted upon the ground indicated.1 A challenge to the validity of a tax on exempt property is a challenge to the legality, not the correctness, of a tax; thus, such challenge may be **filed directly in District court** without being reviewed by a jurisdiction's board of review and tax commission.2   see Exhibit E **72 Am. Jur. 2d State and Local Taxation § 683. Exempt or nontaxable property**

Plaintiffs hereby notify; the entire world, and all parties; involved, that the property in question, known as 20 Center Drive Crawfordsville, Indiana is a non-domestic; mailing address/private/personal-property, held in a fee simple Allodial state free hold under conventional ownership and not subject; to taxation. Plaintiffs also wish to notify all parties & the entire world plaintiffs didn't receive lawful notice, of the tax sale; until the action; was done. Depriving plaintiffs, of plaintiff's liberty of due-process, of law.

The plaintiff's private property description is as follows if any of these descriptions denoted; in the property's record, denote the property as tax-able it is (incorrect) plaintiff noticed the use of the zip code, the plaintiffs already know, this is wrong as plaintiffs are non-domestic; mailers.

ZIP Codes are applicable only to Federal territories and enclaves located within the 50 States of the Union, and within the District of Columbia. -- cf. Piqua Bank v. Knoup, 6 Ohio 342, 404) (1856) and U.S. v. Butler, 297 U.S. 1, 63 (1936)

Statutory Non-Domestic rate,

First Class U.S. Mail Fully Pre-Paid

12 Stat. At Law, Ch 71, Sec 23 Zip Code Exempt [DMM122.32] now [DMM602 1.3 e2]

**Federal Offense to collect additional postage**

18 U.S.C. 1726 ["Without United States"]

Legal LOT 34 FISHERO & FISHEROS 4 TH ADD

ADDRESS 20 Center Drive, Crawfordsville Indiana 47933

Certificate # 541400252

[Unit tax# 54-10-08-111-106.000-030]

If this unit tax # 54-10-08-111-106.000-030 denotes; the plaintiffs private-property, held in a fee simple Allodial State free hold under conventional ownership & used as a home, as tax-able, the number, is incorrect.

Property tax rulings

Officers or agents of United States take property for the United States use, and no compensation; is paid, for the property. The owner; may sue, the officers; or agents, to recover; the property. United States v Lee 106 U.S. 196

States cannot take private property, by taxation; or for any use but public use; (IE immanent domain) Cities cannot be authorized; to donate bonds, to private corporations. Cole v Lagrange 113 U.S. 1 (This second ruling is from the Indiana Supreme Court).

On May 21, 1895, the U.S. Supreme Court ruled that a direct tax; on personal income, was unconstitutional as a result of the case of Pollock v. Farmers 'Loan and Trust Company. The lawsuit, had been precipitated; by the 1894 Income Tax Act. The Supreme Court's 5-4 decision stated that a "direct tax" on the "income; of real, and of personal-property" was "unconstitutional and void."

 "A state may not tax a person's property, or interest; which are not within it's territorial-jurisdiction; and subject only to applicable and controlling federal law. State taxation, is authorized limited, and regulated; by the State & Federal constitution, and by state statute, enacted there under. Gray v Winthrop 115 fl 721, 156 so 270 pg 94 1978."

I Rebecca Hankins & David Roach hereby give notice of defiency of a tax situs.

I Rebecca Hankins hold the property in question in a fee simple Allodial state free hold under conventional ownership.  I Rebecca Hankins & David Roach hereby give notice that I/we have no mortgage or mortgage credit on or secured by the land in question situated within a particular state[7] or the state of Indiana  there is no evidence of indebtedness secured by such a mortgage. Meaning no tax situs could exist. see Exhibit F **84 C.J.S. Taxation § 156 Intangible personal property—Particular obligations, securities, or interests.**

No state can impose taxes on I Rebecca Hankins conventional ownership of land/Real property thus no Tax Situs could have existed on the real property in question.·· Although rights in lands are to be regarded in many respects as localized at the place where the land itself is located for purposes of taxation, many legal interests in land other than conventional ownership may be subjected to taxation in states other than the state in which the land is situated, such as the right to tax a valuable contract

for the purchase of land located elsewhere[6] or the right to tax a mortgage on land located in another state.[7] see Exhibit  G **84 C.J.S. Taxation § 151 Real property and appurtenances and interests therein.**

"Since a state can levy a property tax; only on property, having a sit-us in the state provisions, requiring all property within the state to be subject to taxation; it will not be construed; to include property, which has no sit-us. Dept of Revenue v Brookwood associates 324 So.2d 184 (1 DCA 1975), cert. den., 336 So.2d 600 (Fla. 1976)"

The property, in question; has no sit-us, so how is the property, in question being taxed? Plaintiff's never knowingly; entered into any sit-us trust, so any trust claimed; would be a fraud, and void abinitio; for lack of full, complete, and whole-disclosure.

**A corporation is domiciled for tax purposes in the state of its incorporation, and in the absence of a statute to the contrary, its personal property has its tax situs in that state unless a business situs has been established elsewhere. 84 C.J.S. Taxation §§ 150-162 lays the grounds for a tax situs.**

I Rebecca Hankins & David Roach have Property rights of exemption acquired under statute, conventional ownership is not to be assessed and exempting Rebecca Hankins's & David Roach land/private property for personal use**/** from levy acquired under both Federal, state statutes. And Federal, state Constitutions.

see Exhibit H 26 U.S.C.A. § 6334, I.R.C. § 6334. Property exempt from levy (13) (i) any real property used as a residence by the taxpayer; or [residence meaning Home]

see Exhibit J 50 IAC 4.2-1-1.1 Primary definitions, (2)(n)(o) "Personal property": (1) has the meaning set forth in IC 6-1.1-1-11; and 50 IN ADC 4.2-1-1.1 © 2021

(2) also includes nonautomotive equipment attached to excise vehicles.

(n) "Personal property and real property guide" means a listing of items of machinery, equipment, or structures as to their assessability as real or personal property for Indiana assessment purposes. Generally, if the item is directly used for manufacturing or a process of manufacturing, it is to be considered as personal property. If the item is land or a building improvement, it is to be considered as real property.

(o) "Placed in service" means the asset is ready and available for a specific use whether in a trade or business, the production of income, or a tax-exempt activity. An asset is assessed until it is retired from service. An asset is retired property from service when it is permanently withdrawn from use by:

 (1) sale or exchange of the property; (2) conversion to personal use; (3) abandonment; (4) transfer to a supply or scrap account; or (5) property is destroyed.

Rebecca Hankin's private property for personal use was purchased as a private domicile/home for personal use, held in a fee simple Allodial state free hold under conventional ownership; thus, rendering the property retired property from service. Thus, the property was not to be assessed for a tax per Exhibit A Ind. Code 6-1.1-2-7 § (1) (2) &(3) Exempt property & the above statutes. The property was not

(1) held for sale in the ordinary course of a trade or business;

(2) held, used, or consumed in connection with the production of income; or

(3) held as an investment

Property rights acquired under a statute, duly adjudged to be constitutional, are valid legal rights that are protected by the constitution, not by judicial decision. see Exhibit K **16B Am. Jur. 2d Constitutional Law § 647Statutory property rights.**

Recitals in public statutes of matters of fact are admissible as evidence of such facts1. It is the operative text of the legislation, not prefatory findings, that people must obey and that administrators and judges enforce.5  see Exhibit L **82 C.J.S. Statutes § 393 Facts recited in statutes as evidence**

The Indiana property tax is a "ad valorem tax".  An "ad valorem tax"   is a tax levied on **property or an article of commerce** in proportion to its value as determined by assessment or appraisal. see Exhibit M **Westervelt v. Woodcock, 15 N.E.3d 75 (Ind. Ct. App. 2014).**

This means the **property or article of commerce must actually have a public purpose or use in a business** before it can be assessed in proportion to its value.

Mere conventional ownership alone is not taxable as if it was, it would render property rights and conventional ownership of property a barren right. It also means an "ad valorem tax" is a type of **use tax** placed on the value of **property or an article of commerce** used for a public purpose.

The state may tax that which it can prohibit under the States' police power. see Exhibit N **84 C.J.S. Taxation § 7 Generally** Further evidence backing the fact the "ad valorem tax" is a type of **use tax** placed on the value of **property or an article of commerce** used for a public purpose in a business. A state may lawfully exercise its police power to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations.1 States exercise their right

of taxation under the states police power. see Exhibit O **16A Am. Jur. 2d Constitutional Law § 356 Regulation of occupations pursuant to police power, generally**. 2021.

**84 C.J.S. Taxation § 166 Liability, generally**

**Corporations and their property and franchises are the legitimate subjects of taxation under valid legislative enactments, and general rules governing the construction and operation of tax statutes govern tax statutes with respect to corporations in particular.**

In the absence of an exemption, corporations and their property and franchises are as much the legitimate subjects of taxation as any other persons or property within the reach of the state's sovereign power.[1] A corporation's charter does not determine its liability for taxation.[2] Thus, under statutes providing for the taxation of property generally, the property of corporations is included unless covered under the scope of an exemption.[3]

All taxation of corporations, however, must be grounded in valid and effective legislative enactments, whether general or special,[4] which must be cast in clear unambiguous language.[5] In accordance with the principle governing tax statutes generally,[6] those relating to corporations and corporate property must be construed in a reasonable manner that carries out the plain intention of the legislature.[7] Statutes that impose taxes on corporations must be construed as prospective in operation if a legislative intent to apply the tax retroactively is not apparent[8] or if a retroactive application would create an unfair result.[9]

A tax may be imposed on the property of a domestic corporation within the state regardless of the form of business.[10] Thus, a state may tax the privilege of exercising a corporate franchise within the state, measured by the value of the property located within the state.[11] With respect to liability to taxation, a corporation and its stockholders are regarded by the law as separate persons.[12] A corporation may lawfully manage its affairs so as to save taxes[13] as legitimate means to minimize taxation are the prerogative of any business and perhaps the dictate of marketplace competition.[14]

**84 C.J.S. Taxation § 173 Corporate property, generally Except insofar as exempted, all the property of a corporation within the territorial limits of the state is subject to taxation as if it were held by an individual.**

The property in question was not taken for, and has no public purpose.  see Exhibit P **71 Am. Jur. 2d State and Local Taxation § 3 Nature and purpose of tax— Necessity that tax be for public purpose** A public purpose is necessary to justify any exercise of the taxing power.1

While it is generally agreed that an attempt to raise money by taxation for private purposes is unconstitutional, the authorities are not in agreement in respect to what constitutional provision is thereby violated, some states ==expressly limiting the power of taxation to purposes which are public in their nature==. 1 Other states deem taxation for a private purpose as a taking of property for a use not public in violation of the constitutional provision which is usually considered as a limitation on the power of eminent domain.2 In still other states, the levy of a tax for a purpose not public has been declared to be inconsistent with the republican form of government guaranteed by the constitution.3 The levy of what purports to be a tax for a purpose not public is most

obviously objectionable as the taking of the property of the persons assessed without due process of law, and to impose it is a mere spoliation of the individual without the sanction of any of the precedents constituting due process of law.4 The right of private property, guaranteed by the state and federal constitutions, is subject to the governmental power of taxation, but the power to tax can be exercised only to raise money for a purpose public in nature. 5 see Exhibit Q **71 Am. Jur. 2d State and Local Taxation § 36 Constitutional basis of requirement of public purpose.**

see Exhibit R **67B Am. Jur. 2d Sales and Use Taxes § 156 Nexus between state and use of property being taxed**.  For a use tax to meet the first prong of the test for constitutionality under the Commerce Clause, that is, the requirement that the state have a sufficient nexus with the use of the property being taxed,[1] the taxpayer must substantially avail itself of the privilege of doing business in the taxing state.[2]

**Power to tax that which sovereignty has declared to be illegal**

The state may tax that which it can prohibit.[18]   see Exhibit N **84 C.J.S. Taxation § 7 Generally**. see Exhibit N

The state cannot  prohibit conventional ownership the constitutionally protected rights to acquire,[2] possess,[3] hold, enjoy,[4] use,[5] manage,[6] insure,[7] defend and protect,[8] and improve[9] property, and the right to devote property to any legitimate use.[10] .

In this case private property for personal use as a private domicile/home, held in a fee simple Allodial state free hold under conventional ownership.

The police power cannot extend beyond the necessities of a case and be made a cloak to destroy constitutional rights as to the inviolateness of private property.  Scrutton v. Sacramento County, 275 Cal. App. 2d 412, 79 Cal. Rptr. 872 (3d Dist. 1969).

An owner cannot be deprived of any of the essential attributes which belong to the right of property.[1] Included within the right of property which is constitutionally protected are the rights to acquire,[2] possess,[3] hold,  enjoy,[4] use,[5] manage,[6] insure,[7] defend and protect,[8] and improve[9] property, and the right to devote property to any legitimate use.[10] Indeed, the substantial value of property lies in its use; if the right of use is denied, the value of the property is annihilated and ownership is rendered a barren right.[11] see Exhibit S **16B Am. Jur. 2d Constitutional Law § 634 Particular property rights in context of constitutionally guaranteed property rights.**

**Deprivation of Property Rights in Covenants**.

The American Peoples' property rights are derived from both the United States and Indiana Constitutions. The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides, in pertinent part: . . . . nor shall any person . . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

The due process clause of the Fourteenth Amendment further states: . . . . nor shall any State deprive any person of life, liberty, or property, without due process of law; . . . . Of equal import, the Indiana Constitution provides, in Article I, § 21: . . . . No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered.

In Pulos v. James (1973), 261 Ind. 279, 302 N.E.2d 768, our supreme court interpreted these constitutional provisions to prohibit the taking of private property, i.e., private rights granted by subdivision covenants, for private use. Citing several Massachusetts cases with approval, it said . . . . Restrictive covenants] are real estate. They are part and parcel of the land to which they are attached and with which they pass by conveyance . . . .

. . . . It is beyond the legislative power to take against his will, the property of one and give it to another for what the court deems private uses, even though full compensation for the taking is required . . . . If the statute is merely for the benefit of individual property owners, the purpose does not justify the taking of a right in land against the will of the owner. Pulos, 302 N.E.2d at 773-774.

Thus, a property owner "is secure under the Constitution in his right to keep what is his own, even though another wants it for private uses . . . ." Id. Pulos also said even if such legislation was premised on benefitting the public good, it was still unconstitutional because no attempt was made to compensate the owners:

. . . . It was for [the property owners'] benefit that the restrictive covenants were imposed. Their right to have them enforced is a property right and may not be taken from them without just compensation. Thus, even if it were maintained that the vacation of the restrictions was for the public good, we would run afoul of sections 21 and 23 of Article I of our state constitution and the due process clause of the Fourteenth Amendment to the Constitution of the United States. Id. 302 N.E.2d at 774.

In a final comment, the Pulos court discussed the prohibition of contracts which are against public policy. The court conceded the legislature may prohibit such contracts.

However, it concluded the legislature may not impair previously legal contracts where

the rights therein granted have already vested. Id. at 775. See also Supreme Council

Catholic Knights of America v. Logsdon, et al. (1915), 183 Ind. 183, 108 N.E. 587, 592;

Imler, supra.

In such cases, our authority on review is clear:

. . . . courts may look to the character and reasonableness of the limitation for the

purpose of determining whether or not it reaches beyond the scope of necessary

protection and prevention. Pizza Hut of Muncie, Inc., 357 N.E.2d at 737. See also

Department of Insurance v. Schoonover (1947), 225 Ind. 187, 72 N.E.2d 747;

Weisenberger v. State (1931), 202 Ind. 424, 175 N.E. 238.

Recently, our Indiana Supreme Court laid down a two-pronged test to be used in

determining whether a statute or regulation constitutes a taking under the U.S.

Constitution's Fifth Amendment: whether or not the regulation (a) substantially advances

a legitimate state interest, and (b) deprives the owner of the economically viable use of

his property. Justice DeBruler, speaking for the court, said:

The essence of the first prong of the test is whether government had the right to

exercise its police power in the manner it did, regardless of the burden to property

owners. Or, in other words, it asks the question: has government regulated where it

should not have done so? If the regulation does not bear a substantial relation to the

legitimate ends sought to be achieved, either through a failure of the statute as a whole

to serve those ends or as applied to a particular piece of property, then the exercise of

the police power is deemed to be unreasonable.

. . . . The essence of the second prong of the test is whether government has regulated

to a greater extent than it should have so that a land owner has been effectively deprived of productive use of his property. Dept. of Natural Resources v. Indiana Coal Council, Inc. (1989), Ind., 542 N.E.2d 1000, 1002-1003, citing Nollan v. Calif. Coastal Comm'n. (1987), 483 U.S. 825, 834, 107 S. Ct. 3141, 3146, 97 L. Ed. 2d 677, 687. A proper exercise of the state's police power must benefit the general public, not merely a small group of its citizens. The police power should not be used for the benefit of a small group in the guise of benefitting the public. Pizza Hut of Muncie, Inc., supra, 357 N.E.2d at 737, and Holt, supra, 108 N.E.2d at 637.

After careful consideration of the above precedent, we have determined amended Sec. 14 is not a valid exercise of the state's police power because it (a) violates the residents' Fifth and Fourteenth Amendment rights under the U.S. Constitution, and their rights under Article I, § 21 of the Indiana Constitution, and (b) fails the first prong of the Indiana Coal test. IV. Fifth Amendment Violation.

In Nollan, supra, the progenitor of Indiana Coal, seacoast landowners wanted to build a permanent home to replace a cottage located on their land. The California Coastal Commission conditioned the issuance of its permit to do so upon the Nollans' granting the public an easement to pass across their beach, which was located between two public beaches. The Nollans were to receive no compensation therefor, only the permit. The Commission argued its requirement was not a "taking" under the Fifth Amendment, it was merely a restriction upon the use of the Nollans' property, i.e., a legitimate exercise of its police power. The Court rejected that argument, saying . . . . Perhaps because the point is so obvious, we have never been confronted with a controversy that required us to rule upon it, but our cases' analysis of the effect of other

governmental action leads to the same conclusion. We have repeatedly held that, as to property reserved by its owner for private use, the right to exclude [others is] 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S. Ct. 3164, 3174, 73 L. Ed. 2d 868 (1982), quoting Kaiser Aetna v. United States, 444 U.S. 164, 176, 100 S. Ct. 383, 391, 62 L. Ed. 2d 332 (1979). In Loretto we observed that where governmental action results in "[a] permanent physical occupation" of the property, by the government itself or by others, see 458 U.S., at 432-433 n. 9, 102 S. Ct., at 3174-3175, n. 9, "our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner," id., at 434-435, 102 S. Ct., at 3175-3176. We think a "permanent physical occupation" has occurred, for purposes of that rule, where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises. Nollan, 107 S. Ct. at 3145.

It is hornbook law that the exclusive right to occupy and possess real property is a fundamental property right. 72 C.J.S. Property § 2 (2010). Real property carries with it a bundle of rights and one of the fundamental rights in that bundle is ownership. American Jurisprudence 2nd 1964 vol. 16 § 362 Nature of Right guaranteed The right of property, is a fundamental, natural, inherent, and unalienable right….. In fact, it does not owe its origin; to the constitutions; which protect it, for it existed before them. It is

sometimes characterized judicially; as a sacred right, the protection of which, is one of the most important objects; of government. Pg. 691

Another fundamental right in that bundle of rights is the right to possession and enjoyment of the property. When a written contract grants the right of possession of real property, the contract grants a real property interest. The right to possession may be temporary, it may be subject to certain conditions, and it may be inferior to other rights in the bundle, but it is an interest in real property. Manufactured Housing Communities of Washington v. State, 142 Wn.2d 347, 13 P.3d 183 (2000)

The Commission also argued the easement there requested was simply one part of a comprehensive program to provide continuous public access to the beach as the lots undergo development or redevelopment. In answer to that proposition, the Supreme Court said

That is simply an expression of the Commission's belief that the public interest will be served by a continuous strip of publicly accessible beach along the coast. The Commission may well be right that it is a good idea, but that does not establish that the Nollans (and other coastal residents) alone can be compelled to contribute to its realization. Rather, California is free to advance its "comprehensive program," if it wishes, by using its power of eminent domain for this "public purpose," see U.S. Const. Amdt. V; but if it wants an easement across the Nollans' property, it must pay for it. Nollan, 107 S. Ct. at 3150.

Likewise, here. Each proposed group house will be a permanent structure in the subdivision where each developer proposes to locate them, no mere easement is involved. Under Nollan, a "permanent physical occupation" will occur by a commercial

structure which will be a multi-person, not a single family residence. Both these conditions violate each subdivision's covenants. Thus, the residents' Fifth Amendment rights would be violated if such occupation was to occur or continue unabated. Patently, such "permanent physical occupation" is substantially more than a mere restriction upon the use of the residents' property. Even if the state was the moving party here, it would have to "pay for it", as was the case in Nollan. Because the statute makes no provision for payment, and private parties cannot condemn the property interests of other private property owners, amended Sec. 14 constitutes an invalid exercise of the state's police power, Nollan, supra; Indiana Coal, supra; Pulos, supra, both as to the U.S. Constitution's Fifth Amendment and the Indiana Constitution's Article I, § 21. Fountain Park Co. v. Hensler (1927), 199 Ind. 95, 155 N.E. 465, 469.

Bogert, Trust & Trustees, 2nd Ed., § 1003, pp. 517-520:

"In a number of cases where the interests of equitable life cestui and legal or equitable remainderman have become vested in the same person by conveyance or operation of law, after the trust began, the courts have decreed that the trust was ended or terminable; but in other cases, where some useful purpose was deemed to be capable of accomplishment by the continuance of the trust, the courts have refused to regard the single ownership of the two items of property as fatal to the trust." See generally: Brooks v. Davis (1913), 82 N.J. Eq. 118, 88 A. 178; Rowley v. American Trust Co. (1926), 144 Va. 375, 132 S.E. 347; Gillogly v. Campbell (1936), 52 Ohio App. 43, 2 N. E. 2d 620; Nichols v. First Nat. Bank of Baker (1953), 199 Or. 659, 264 P. 2d 451; In re Bonham's Estate (1958), 393 Pa. 355, 143 A. 2d 50.

**136 Am.Jur. Proof of Facts 3d § 15. Causes of action for fixtures—Conversion**

Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner or withholding it from the true owner's possession under a claim inconsistent with the owner's rights.[1] The four basic elements of conversion are:

- (1) the plaintiff's ownership or right to possession of the property at the time of the conversion;

- (2) the defendant's conversion by a wrongful act or disposition of the plaintiff's property rights;

- (3) a demand by the plaintiff for the property's return, and

- (4) a plea for an award of damages.[2]

There is no prejudgment writ for immediate possession similar to that of a writ of replevin. Further, while replevin can arise from rights of contract, conversion is an intentional tort.[3]

It is not necessary that the property be wrongfully obtained,[4] but the withholding must be done in derogation of the true owner's rights.[5] Thus, conversion will lie when the defendant lawfully obtained possession of the property as occurs when a tenant places an item of personalty onto leased premises to use it in a business. The plaintiff must demand return or delivery of the property, or otherwise offer the defendant an opportunity to restore the property to the plaintiff's possession before the plaintiff can maintain an action in conversion. There is no requirement that a plaintiff first exhaust his remedies in a replevin action before electing to sue for conversion. If the evidence is

such that the elements of conversion may be proven, then such a claim may be pursued without regard to other potential remedies.[6]

Let it be known I Rebecca Hankins & David Roach hereby give notice of conversion, Extortion, and Robbery of private property held for personal use by way of unlawful taxation without public purpose for a private individuals use. I Rebecca Hankins & David Roach give notice of demand for the return of said private property. I Rebecca Hankins & David Roach also gives notice of the right to an action by writ of replevin for conversion, Extortion, and Robbery.

I Rebecca Hankins & David Roach hereby give notice of our intent to file a Federal civil suit for a redress of grievance for the conversion, Extortion, and Robbery of private property known as 20 Center Drive held for personal use. This civil suit is being filed to recover damages & the rightful ownership and title to said property.

A challenge to the validity of a tax on exempt property is a challenge to the legality, not the correctness, of a tax; thus, **such challenge may be filed directly in district court** without being reviewed by a jurisdiction's board of review and tax commission.2 see Exhibit E 72 **Am. Jur. 2d State and Local Taxation § 683 Exempt or nontaxable property**

see Exhibit T **63C Am. Jur. 2d Property § 46 Procedure in actions involving property, generally; parties.** The law presumes that the infringement of a property right is harmful and sustains a remedy to vindicate that right and prevent future harm.1 The rules and principles relating to actions, generally,2 apply to actions relating to real property with the same force as to other actions.3 As a general rule, only the owner of the fee has a right of action for damages to the fee. 4 A trespass on a right of property is

actionable upon any physical invasion of it, regardless of whether the invasion causes measurable damages, 5 and an owner, whether he or she is in possession or not, may recover for injury to his or her property by the negligence of another. 6 Further, the owner of any particular right, interest, or estate in real property,7 including one rightfully in the occupancy or possession of the realty,8 has, generally at least, a right of action for damages for injury to his or her particular right, interest, or estate. Thus, the holder of a nonpossessory interest in property can generally sue for damage to that interest.9

see Exhibit U **63C Am. Jur. 2d Property § 42 Theft of personal property as affecting owner's title and rights.** A property owner's rights are superior to any rights of a subsequent possessor who has stolen the property or purchased stolen property.1 Indeed, the theft of goods or chattels does not divest one who owns, or has title to, such property from his or her ownership of the property,2 since one cannot make good title to that which he or she does not own.3 The owner may follow and reclaim the stolen goods wherever he or she may find them.4 If possession of the stolen goods by an innocent subsequent purchaser may be deemed lawful, it is rendered unlawful by his or her refusal to honor a demand by the true owner for their possession.5 Even though such a purchaser may be treated as having title and the right to possession as against everyone but the rightful owner, a sale by the thief or by any person claiming under the thief does not vest any title in the purchaser as against the owner, although the sale was made in the ordinary course of trade and the purchaser acted in good faith.6 However, one without knowledge that money transferred to him or her has been obtained through a felony, who receives it honestly and in good faith, although from the thief, acquires good title to it even as against the true owner.7

The owner may, through an appropriate action or proceeding, recover the stolen goods8 or their value,9 either from the thief10 or from the estate of the thief,11 or from any other person who has not acquired such title and into whose possession they have come, whether innocently or otherwise.12 Thus, where an automobile which was allegedly purchased with cash stolen in the course of a bank robbery, and which was seized by federal officers upon the arrest of the suspected robbers, has been purportedly assigned by the suspects, before their conviction, to attorneys acting on their behalf in the prosecution, such attorneys cannot claim to have the status of bona fide purchasers for value, since they could not have been oblivious to the "large black cloud" hovering over the interest of the suspects in the chattel, and in that event, the attorneys stand in no better position than the robbery suspects.13

In the face of a delay in proceeding to enforce a decree by application for writ of assistance, the writ may be withheld only where it appears that rights have arisen or been changed by reason of some subsequent agreement or happening rendering its issuance unjust. See Exhibit Z17 **C.J.S. Assistance, Writ of § 8 Defenses**

**As the facts clearly show** I/we Rebecca Jane:-Hankins & David James:-Roach are the rightful owner and occupants of the property,  The property is and was at the time exempt from taxation was taken and sold under color of law and under color of official office, issuance of any writ of assistance would be unjust.

Further, the only matter which will be considered in passing on the application for a writ of assistance is whether the applicant is entitled to be put in possession under the decree; the parties are entitled to be heard on the application. See Exhibit Y **7 C.J.S. Assistance, Writ of § 12 Issues, hearing, and evidence**

Rebecca Jane: -Hankins & David James: -Roach fear we will not be given our chance to be heard on the matter and there is no question in this instance the applicant is not entitled to be put in possession, leaving any issuance of any writ of assistance to be unjust.

Rebecca Jane: -Hankins & David James: -Roach fear we will not be given our chance to be heard on the matter as we have received a less than defective allege notice for writ of Assistance from one Vincent C. Kregear 35277-49 Attorney at Law.

The alleged notice for writ of Assistance is improper1, has no cause number on it 2, does not even say which Court the alleged writ of Assistance hearing is to be held in  3, making it impossible to respond. This again would make any issuance of any writ of assistance to be unjust as Rebecca Jane: -Hankins & David James: -Roach would be deprived of our right to be heard.  See Exhibit Z alleged notice for writ of Assistance

The alleged notice for writ of Assistance makes reference to 54C01-1609-MI-000727 A tax case from 2014 wherein Rebecca Jane:-Hankins & David James:-Roach Objected and challenged the property tax.

 The Assessor immediately discharged the tax debt and returned the property without challenging the status of the property as not taxable for two reasons:

1.  The property in question was and is exempt under Ind. Code 6-1.1-2-7 § (1) (2) &(3) Exempt property.

2.  We received no lawful notice of sale as required by Indiana law.

As the Assessor immediately discharged the tax debt and returned the property without challenging the status of the property as not taxable, the Assessor clearly agreed.

Under the provision of the Civil Rights Act, providing that any person who under color of law deprives a citizen of any rights, privileges, or immunities secured by the United States Constitution and laws shall be liable to the party injured,1 an action will lie in favor of any person whose property is taken for public use without just compensation by a municipality through a zoning regulation that denies to the owner any economically viable use thereof.2 See Exhibit Z1**14 C.J.S. Civil Rights § 110 Civil rights actions pertaining to zoning and land use**

Remedy sought

1. The return of the title to 20 Center Drive Crawfordsville Indiana in the form of Allodial Title so this never happens again in the future.

2. Montgomery County Assessor be ordered to mark 20 Center Drive Crawfordsville Indiana as not taxable in the records so this never happens again in the future.

3. The sum of one point five million dollars be paid in Damages to Rebecca Jane Hankins name For stress worry and the suffering caused in wondering if her life's work to simply own a home would be stolen. To quote Shakespeare's Othello He that filches from me my good name robes me of that which enriches him not but makes me poor indeed.

I/we Rebecca Jane:-Hankins & David James:-Roach SOLOMELY SWEAR

UNDER PENALTY OF PERJURY THAT ALL HEREIN IS TRUE AND ACCURATE and all

exhibit are self-authenticating per Indiana & Federal rules of Evidence 902 § 5.

Dated this 11th of January, 2022

Electronically signed

Rebecca Jane Hankins
Rebecca Jane Hankins

David James Roach
David James Roach

Parties served

100 E Main St., Crawfordsville, IN 47933 Sherri Bentley, Montgomery County Assessor  Ph 765-364-6422  Email sherri.bentley@montgomerycounty.in.gov

Troy Tarpin Wingate Properties LLC Initiating PO Box 354 Connersville Indiana by Vincent C. Kregear.35277-49 501 N. Central Ave. Connersville Indiana 47331 Email vkregear@greesonlaw.com

Montgomery County Council 100 E Main St Crawfordsville, IN 47933 Phone Business: (765) 364-6400 Email jake.bohlander@montgomerycounty.in.gov

**Vincent C. Kregear** council of record 12048 Saint Marys Rd Brookville, IN 47012-8824 Franklin County **Contact Vincent C. Kregear** (317) 941-9864  Emails vkregear1@hotmail.com vkregear1@gmail.com or vkregear@greesonlaw.com
- 

Documents served

List of Exhibits and Exhibits
Federal civil summons
Federal Complaint and request for Injunction with attached
Complaint for Emergency Injunctive Relief for possible writ of assistance

Certificate of Service

i/we Rebecca Hankins and David Roach hereby certify that a copy of the forgoing documents Complaint for Emergency Injunctive relief for possible writ of assistance and exhibits, List of Exhibits, Federal civil summons, and Federal Complaint and request for Injunction, were served upon the above forgoing interested parties and counsel of record by email & United States mail. In accordance with Federal Rules of Civil

procedure rule 5.

Dated this 11 day of January, 2022.  Electronically signed

Rebecca Jane Hankins
Rebecca Jane Hankins

David James Roach
David James Roach